UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES LAPLANTE,                    :

    Plaintiff,                 :

v.                                 :        Civ. No. 3:16-cv-1249(RNC)

NANCY A. BERRYHILL, Acting         :
Comm'r, Social
Security Admin.,                   :

    Defendant.                 :

RULING AND ORDER

Plaintiff brings this action pursuant to section 205(g) of
the Social Security Act, 42 U.S.C. § 405(g), seeking review of
the Commissioner's final decision denying plaintiff's application
for disability insurance benefits ("DIB").  In 2013, plaintiff
filed an application for DIB alleging disability beginning in
2008, when he was in a car accident.  After a hearing, an
administrative law judge found that plaintiff's diabetic foot
ulcer is a severe impairment but that he is not disabled within
the meaning of the Act because he retains the capacity to perform
the full range of sedentary work as defined in 20 C.F.R.
§ 404.1529 and SSRs 96-4p and 96-7p.  Plaintiff has moved for an
order reversing the decision of the Commissioner (ECF No. 14),
and defendant has moved for an order affirming the decision  (ECF
No. 16).  Plaintiff argues that the ALJ's decision violates the
treating physician rule and is not supported by substantial
evidence.  Respondent contends that the ALJ adequately explained

1

his reasons for discounting the treating physician's opinion and the ALJ's finding that plaintiff can perform sedentary work is supported by substantial evidence. I think respondent is correct. Therefore, the decision is affirmed.

I. Background

Plaintiff sustained injuries to his left and right knees and back after he was struck by a car in July 19, 2008. Stipulation of Facts (ECF No. 14-2) ¶ 5. He was admitted to St. Francis Hospital that day, received orthopedic surgery for an open reduction internal fixation ("ORIF") of a right tibial fracture on July 21, 2008, then attended weekly rehabilitation and occupational therapy from August 3, 2008 through October 18, 2008. Id. ¶¶ 6-7.

Plaintiff attended physical therapy sessions from October 2, 2008 through August 13, 2009 for a variety of conditions, including his right tibial fracture, right scar tissue, right chronic ankle spasm and sciatica. Id. ¶ 8. On December 22, 2008, Dr. Gordon Zimmerman determined that plaintiff had a "grade III MCL tear of the left knee," but was recovering satisfactorily and would have a "small impairment in the range of 5 to 10%." Id. ¶ 15. Dr. Zimmerman ultimately determined that plaintiff had a 10% permanent partial impairment of his left knee. Id. ¶ 20. On January 15, 2009, plaintiff had an evaluation for his lower back pain, resulting in an assessment of a 3% impairment rating

of the lumbar spine.  Id. ¶ 16.  On June 25, 2009, Dr. Kabbash assigned the plaintiff a final 10% permanent disability rating for his right knee.  Id. ¶ 11.  At plaintiff's final physical therapy visit on August 13, 2009, he was able to "perform a hopping motion without an increase in pain and he was able to perform a single leg heel raise."  Id. ¶ 12.  He canceled his last scheduled visit and later reported that he was "doing well and managing with his home exercise program."  Id.

In January 2011, plaintiff sought medical treatment for worsening knee pain.  Id. ¶¶ 23-24.  He had an arthroscopic partial meniscectomy in his left knee, to which he responded well; he stated that "he felt much better; he was bearing weight as tolerated and increasing his activity."  Id. ¶¶ 25-26.  In 2012, plaintiff's left knee pain persisted.  Id. ¶ 32.  Notes from 2012 reveal that plaintiff was treated for type 2 diabetes and was not compliant with taking his diabetic medicine and following his diet.  Id. ¶¶ 32, 33.

In March 9, 2013, plaintiff was treated at Rockville General Hospital for right dorsal foot pain and ankle pain after dropping a piece of wood on his foot during a home improvement project. Id. ¶ 35.  Podiatrist Eric Thompson examined the plaintiff on March 12, 2013, and provided care for a diabetic foot infection with diabetic neuropathy.  Id. ¶ 36.  Dr. Thompson saw the plaintiff for much of 2013 and 2014, and his notes reveal that

the plaintiff had at times been doing a lot of walking.  Id. ¶
37.  April 4, 2014, plaintiff stated that he had not followed up
on treatment for three months because he was "too busy."  Id.

On April 12, 2013, a Connecticut state medical consultant
reviewed plaintiff's record and concluded that plaintiff could
lift 20 pounds occasionally and ten pounds frequently; stand
and/or walk for three hours, and sit for about six hours in an
eight-hour workday.  Id. ¶ 28.  He did not have any manipulative,
visual, communicative or environmental limitations.  Id.  A
subsequent mental status examination found that "plaintiff would
have the ability to function on tasks that did not require much
movement or lifting."  Id. ¶ 29.  A state psychologist reviewed
the record and found that plaintiff could "understand and retain
simple directives of two-to-three steps, though he would have a
difficult time remembering more complex instructions."  Id. ¶ 30.
On October 17, 2013, Dr. Dodenhoff performed a one-time physical
evaluation, finding that plaintiff suffered from sleep apnea,
restless leg syndrome and a diabetic ulcer on his right foot.
Id. ¶ 40.  Dr. Dodenhoff wrote that plaintiff was able to sit and
handle objects and "should be able to respond appropriately to
supervision, coworkers, and the pressures in a work setting."
Id.

Plaintiff's condition seemingly worsened in 2014.  He was
treated at Rockville General Hospital for foot pain and a chronic

ulcer on April 15, 2014, followed by several additional procedures related to his foot. Id. ¶¶ 42-44. Dr. Eric Lui, a podiatrist, began treating the plaintiff on May 7, 2014. Id. ¶ 45. Dr. Lui's notes reflect the following diagnoses: diabetic neuropathy (May 7, 2014); neuropathy with an open wound on the right foot (May 13, 2014); and neuropathy with a second open wound on the right foot (May 20, 2014). Id. ¶¶ 46-48. During the ensuing months, Dr. Lui examined the plaintiff weekly for problems with his right foot. R. at 61. On November 5 and 12, 2014, Dr. Lui urged plaintiff to remain off the foot as much as possible, keep it elevated and use a walking boot as necessary. Stipulation of Facts ¶ 65-66.

On October 24, 2014, Dr. Lui completed a medical assessment. Id. ¶ 67. He opined that plaintiff could occasionally lift up to 20 pounds but could never carry any weight due to his diabetic neuropathy and the chronic ulcer on his right foot. Id. He could sit for 30-45 minutes, stand for fifteen minutes and walk for fifteen minutes without interruption. Id. Over the course of an eight-hour workday, he could sit for 3 to 4 hours, stand for one hour, and walk for a total of one hour; however, he would have to lie down and elevate his right foot 3 to 4 times a day for 30 to 60 minutes each time due to his chronic diabetic ulcer. Id. He could use his upper body bilaterally and left foot with little or no restriction, and occasionally operate a motor

vehicle, although he could not operate foot controls with his right foot.  Id.  He could not climb stairs, be around moving mechanical parts or be in extreme cold or heat.  Id.

Plaintiff originally filed for DIB on February 19, 2013.  R. at 155-160.  After a hearing, the ALJ concluded that, although plaintiff's chronic foot ulcer constitutes a severe impairment, he retains the residual functional capacity to perform the full range of sedentary work.  With regard to Dr. Lui's assessment of plaintiff's limitations, the ALJ stated:

> The assessment of the claimant's podiatrist, Dr. Lui (Ex. 16F) is given some weight.  It is based on a treating relationship and specialty as a podiatrist. It suggests a less-than-sedentary profile that is not fully supported by the record, including his own notes (Ex. 18F).  For instance, he states that [t]he claimant cannot use his hands bilaterally more than frequently, but there is no indication of any neurological findings in the upper extremities (Exs. 11F, 18F, 20F).  The idea that he cannot use foot controls with his right foot is inconsistent with his admission that he can drive (Ex. 4E).  There is no indication that he is unable to sit without limitation, given that the only findings are some erythema and sensory loss in the lower extremities. (Exs. 11F, 18F, 20F). Also, these notes indicate no gait issues either (Id.). Accordingly, the degree of restriction on sitting, standing, and walking is unjustified.  Thus, the opinion is given credit to the extent it supports a full sedentary profile.  This is consistent with his indication that he could go back to a desk job. (Ex. 7F).

R. at 39.

With regard to plaintiff's need to elevate his leg, the ALJ stated:

> It should be noted that, in unskilled work, the daily

6

> work schedule includes a lunch break and usually two
> additional breaks; consistent work is performed for no
> more than two-hour periods.  Thus, the claimant's need
> to elevate his leg (see Ex. 16F) is accounted for in
> the normal work schedule.

R. at 40.

On this appeal, plaintiff argues that the ALJ violated the treating physician rule and substituted his opinion for that of Dr. Lui whose assessment of plaintiff's limitations, if fully credited, would support a finding that plaintiff is limited to part-time or less than sedentary work.  In addition, plaintiff argues that the record lacks substantial evidence to support the finding that his need to elevate his foot three times a day for thirty to sixty minutes each time is accounted for in the normal work schedule.  He contends that such a finding requires expert vocational testimony.

II.  Standard of Review

The ALJ's decision may be set aside only if the factual findings are not supported by substantial evidence or the decision is based on legal error.  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Zabala v. Astrue, 595 F.3d 402, 408 (2d Cir. 2010).  This Court's role is not to reweigh the evidence.  Rather, the ALJ's decision must be affirmed "if it is based upon substantial evidence even if the evidence would also

support a decision for the plaintiff." <u>Bellamy v. Apfel</u>, 110 F.
Supp. 2d 81, 87 (D. Conn. 2000). When a decision "rests on
adequate findings supported by evidence having rational probative
force," a court may "not substitute [its] judgment for that of
the Commissioner." <u>Veino v. Barnhart</u>, 312 F.3d 578, 586 (2d Cir.
2002).

III. <u>Discussion</u>

A person who is disabled is entitled to benefits under the
Social Security Act. 42 U.S.C. § 423(a)(1)(A). A "disability"
is "an inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not
less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the
Social Security regulations, determining whether an individual is
disabled entails five steps:

> First, the [Commissioner] considers whether the
> claimant is currently engaged in substantial gainful
> activity. If he is not, the [Commissioner] next
> considers whether the claimant has a 'severe
> impairment' which significantly limits his physical or
> mental ability to do basic work activities. If the
> claimant suffers such an impairment, the third inquiry
> is whether, based solely on medical evidence, the
> claimant has an impairment which is listed in Appendix
> 1 of the regulations. If the claimant has such an
> impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a
> 'listed' impairment is unable to perform substantial
> gainful activity. Assuming the claimant does not have

a listed impairment, the fourth inquiry is whether,
despite the claimant's severe impairment, he has the
residual functional capacity to perform his past work.
Finally, if the claimant is unable to perform his past
work, the [Commissioner] then determines whether there
is other work that the claimant could perform.

Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983). At the

first four steps, the claimant bears the burden of proof. But

once the claimant shows at the fourth step that she cannot

perform her past work, the burden shifts to the Commissioner at

step five to show the existence of other work suited to the

claimant's abilities. Kohler v. Astrue, 546 F.3d 260, 265 (2d

Cir. 2008).

    A.    The Treating Physician Rule

    Plaintiff argues that the ALJ erred in giving only "some

weight" to the assessment of Dr. Lui and violated the treating

physician rule by failing to set forth good reasons for the

weight he assigned to the assessment. A treating physician's

opinion is entitled to controlling weight if it is "well-

supported by medically acceptable clinical and laboratory

diagnostic techniques, and is not inconsistent with other

substantial evidence of record." 20 C.F.R. § 404.1527(c)(2). In

assessing the weight to be given the opinion of a treating

source, an ALJ considers the length of the treating relationship

and the frequency of examination, the nature and extent of the

treatment relationship, the supportability of the opinion, the

consistency of the opinion with other evidence, the source's area

of specialization and "other factors." 20 C.F.R.
§ 404.1527(c)(2)(i)-(ii). If an ALJ does not provide reasons for
the weight given to an opinion, the case may have to be remanded.
See Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).

The ALJ's decision regarding the weight to be given Dr.
Lui's assessment of plaintiff's limitations is quoted above. In
substance, the ALJ decided that the degree of restriction placed
by Dr. Lui on plaintiff's ability to sit, stand and walk was not
justified. That conclusion is adequately supported by the
reasons the ALJ provided in the quoted portion of his decision
and by the record as a whole. Plaintiff's primary impairments
are the chronic diabetic ulcer on his right foot and the
neuropathy in his right leg. R. at 575-76; 695-718. The record
shows that when he visited his doctors, he wore regular footwear
and reported that he had been walking around "a lot." R. at 603,
604, 610, 701, 702, 703, 704. Plaintiff told a state
psychologist in 2013 that he was able to care for himself,
perform housework, drive and take care of his young child. R. at
58, 534, 536. At this same meeting, plaintiff said he could
engage in sedentary employment at a desk. R. at 534. An
assessment by Dr. Dodenhoff supports a finding that plaintiff is
capable of doing sedentary work while seated at a desk. R. at
575-76. Given this other evidence, the ALJ did not err in
discounting Dr. Lui's assessment.

The ALJ's opinion does not violate the treating physician rule. The ALJ explained that, although Dr. Lui's assessment was based on a treating relationship with the plaintiff, to the extent it suggested a "less-than-sedentary profile, it was not well-supported and inconsistent with other evidence. True, the ALJ did not comprehensively discuss every criteria listed in the regulation, but that is not invariably required. See Atwater v. Astrue, 534 F. App'x 71, 75 (2d Cir. 2013) ("We require no . . . slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."). Plaintiff contends that the ALJ erred in failing to contact Dr. Lui but contacting Dr. Lui was not required because there were "no obvious gaps in the administrative record." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

B.  Failure to Use Vocational Expert

Plaintiff argues that the ALJ should have used a vocational expert to opine on the particular type of work plaintiff can obtain and perform. He argues that the ALJ should not have relied on the medical vocational guidelines alone because determining plaintiff's residual functional capacity required vocational expert testimony. Id. I disagree.

"In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids)." Butts v. Barnhart, 388 F.3d 377, 383

(2d Cir. 2004), as amended, 416 F.3d 101 (2d Cir. 2005) (quoting Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999)).  However, "exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations."  Butts, 388 F.3d at 383 (quoting Rosa, 168 F.3d at 78).  This may be true when the claimant's "exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work the claimant can perform."  Id.  Nonexertional limitations may include difficulty concentrating, seeing or hearing, or physical movements like reaching, stooping or crouching.  20 C.F.R. § 416.969a.

Social Security Policy Interpretation Ruling 96-9p describes "sedentary work" as work performed primarily while sitting, but with an occasional amount (no more than two hours per workday) of walking and standing.  Accordingly, "[s]itting would generally total about 6 hours of an 8-hour workday."  SSR 96-9p.  The normal workday would include morning, lunch and afternoon breaks. The ALJ found that plaintiff could perform six hours of seated work per day based on the totality of the evidence in the record. The ALJ noted that the plaintiff would require breaks to elevate his leg that could coincide with the breaks in an average workday as set forth in Social Security Ruling 96-9p.  The record contains no evidence of nonexertional limitations that would

limit the utility of the grids.  The ALJ did not err in failing
to use a vocational expert.


IV.  <u>Conclusion</u>

Accordingly, the Commissioner's motion to affirm is granted
and plaintiff's motion to reverse is denied.  The Clerk may enter
judgment and close the file.

So ordered this 29th day of September 2017.


_____/s/RNC_____
Robert N. Chatigny
United States District Judge